IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:09CR205 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | SENTENCING MEMORANDUM |
| WAKAJA HARDEN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court for sentencing. This memorandum opinion supplements findings made on the record at a sentencing hearing on March 23, 2010.

**I. FACTS**

The defendant was charged in Count I of the indictment with knowingly engaging in and attempting to engage in a sexual act with an Indian female, when she was incapable of appraising the nature of the conduct and physically incapable of declining participation in and communicating unwillingness to engage in the sexual act, in violation of 18 U.S.C. § 2242(2)(A) and (B) and 1153. Filing No. 1, Indictment. The statutory range of punishment for that crime is up to life in prison. 18 U.S.C. § 2242.

Harden was tried to a jury and convicted. Filing No. 56, Jury Verdict. The court accepted the jury's verdict and directed the United States Office of Probation (hereinafter, "the Probation Office") to prepare a Presentence Investigation Report (hereinafter, "PSR") that calculated Harden's sentence under the United States Sentencing Guidelines ("the Guidelines"). Filing No. 61, PSR (Sealed).

The evidence adduced at trial showed that Harden sexually assaulted a 15-year-old female who was highly intoxicated. *See also id*. at 3. The Probation Office determined

that U.S.S.G. § 2A3.1(a)(2) provides a base offense level of 30 for Harden's violation. *Id.* at 4. A two-level upward adjustment was applied under U.S.S.G. § 2A3.1(b)(2)(B) for a victim between the ages of 12 and 16, resulting in an adjusted offense level of 32. *Id.* at 6. Harden has 2 criminal history points for a conviction for theft by receiving stolen property and his resulting criminal history category is II. *Id.* at 10. At offense level 32 and criminal history category II, Harden's Guidelines range of imprisonment is 135 months (roughly eleven years) to 168 months (fourteen years). The government adopted the findings in the PSR. Filing No. 30.

Harden moved for a downward departure and for an outside-the-Guidelines sentence. Filing No. 59. He argues that the Guidelines for sex offenses are not the product of the Sentencing Commission's characteristic institutional role, but were imposed by Congressional directive. He further argues that the Guidelines engender disparity for Native Americans relative to state court prosecutions. Also, he contends a variance is warranted by reason of his youth and lack of a violent record. In support of the motion, the defendant presented data from the Nebraska Department of Corrections for the last five years showing that a median state sentence for the offense of single-count, first-degree sexual assault would be 60 to 93 months (adjusting for parole eligibility). He compared that sentence to the median federal sentence for this offense before the enactment of the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act ("PROTECT Act"), Pub. L. No. 108–21, 117 Stat. 650 (2003), of 78 to 103

months and the post-PROTECT Act median sentence of 115 months to 143 months.[1] Filing No. 60, Brief at 5-6.

Harden is now twenty years old and was eighteen at the time of the offense. Filing No. 61, PSR at 11. He was removed from his parental home and placed at Boys Town in Omaha, Nebraska, when he was 16 years old and resided there from June 30, 2005, through March 28, 2007, when he ran away from Boys Town and returned to his parents' home in Winnebago, Nebraska. He has stated that his alcohol abuse has caused problems in his home. He was diagnosed with Attention Deficit/Hyperactivity Disorder (ADHD) approximately five years ago. He began using alcohol at the age of 14 and has blacked out and suffered withdrawal symptoms as a result of his alcohol abuse. He stated that he has a problem with alcohol and believes he would benefit from completing substance abuse treatment. He also used marijuana heavily between the ages of 14 and 15. He has participated in the "Circle of Peace" program through the Winnebago Counseling Center in Winnebago, Nebraska, and he also completed a 45-day Nebraska Urban Indian Coalition inpatient treatment program.

## II. LAW

The Sentencing Guidelines are no longer mandatory. *United States v. Booker,* 543 U.S. 220, 260-61 (2005). Consequently, the range of choice in sentencing dictated by the facts of the case has been significantly broadened. *Gall v. United States,* 552 U.S. 38, 59

---

[1]The PROTECT Act made several changes with respect to the child pornography guidelines and contained provisions by which Congress, for the first and only time to date, directly amended the Guidelines. United States Sentencing Commission, *The History of the Child Pornography Guidelines* 38 (October 2009) ("Child Porn. History Rep't"), available at http://www.ussc.gov/full.pdf ("Child Porn. History Rep't"). As relevant to this case, the Sentencing Commission responded to Congressional directives in the PROTECT Act by increasing the base offense level at U.S.S.G. § 2A3.1 from level 27 to level 30 to maintain proportionality with the production of the child pornography guideline, which had been increased to 32 under the PROTECT Act. U.S.S.G. App. C (Supp.), amend. 664 (2004).

(2007) (finding a sentence outside the Guidelines to be reasonable); *see also Kimbrough v. United States,* 552 U.S. 85, 101 (2007); *Rita v. United States,* 551 U.S. 338, 349-50 (2007); *Cunningham v. California,* 549 U.S. 270, 286-87 (2007). District courts must "give respectful consideration to the Guidelines," but are permitted "'to tailor the sentence in light of other statutory concerns as well.'" *Kimbrough*, 552 U.S. at 101 (quoting *Booker,* 543 U.S. at 245-246).

In imposing a sentence, the district court must consider the factors set out in the Sentencing Reform Act at 18 U.S.C. § 3553(a).[2] *Nelson v. United States,* 129 S. Ct. 890, 891-92 (2009) (per curiam). That statute "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough,* 552 U.S. at 101 (quoting 18 U.S.C. § 3553(a)). Although the Guidelines remain "the starting point and the initial benchmark" in determining a sentence, they are not the only consideration. *Gall,* 552 U.S. at 49. The district court "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented." *Id.* at 50; *Nelson*, 129 S. Ct.

---

[2]Those factors are:
(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;
(2)   the need for the sentence imposed–
      (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment or the offense;
      (B)   to afford adequate deterrence to criminal conduct;
      (C)   to protect the public from further crimes of the defendant; and
      (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3)   the kinds of sentences available;
(4)   the advisory guideline range;
(5)   any pertinent policy statements issued by the Sentencing Commission;
(6)   the need to avoid unwarranted sentence disparities; and
(7)   the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

at 892 ("The Guidelines are not only not mandatory on sentencing courts; they are also not to be *presumed* reasonable.") (emphasis in original). The sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, explaining any variance from the former with reference to the latter. *Nelson,* 129 S. Ct. at 891-92.

The Supreme Court rejects the notion that "'extraordinary' circumstances [are required] to justify a sentence outside the Guidelines range" and rejects "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Gall,* 552 U.S. at 49. The court is free to consider "whether the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply, perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless." *Rita*, 551 U.S. at 351 (citations omitted).

The court can consider whether the guideline at issue exemplifies the Sentencing Commission's "exercise of its characteristic institutional role" which is "to formulate and constantly refine national sentencing standards." *Kimbrough,* 552 U.S. at 108-09 (noting that when operating within that institutional role, the Sentencing Commission "has the capacity courts lack" and can base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise); *Rita,* 551 U.S. at 349-50. In formulating the Guidelines, the Commission developed and used data on past practices and recidivism. *See* United States Sentencing Commission, *Fifteen Years of*

*Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* 72-73 (November 2004) ("Fifteen-Year Assessment"), available at http:// www.ussc.gov/ 15_ year/ 15_ year_ study_ full.pdf; U.S.S.G. § 1A.1, intro. comment., pt. A, ¶ 3; *Kimbrough*, 552 U.S. at 96; *Gall*, 552 U.S. at 46 (noting that the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions"). Based on these sentencing statistics, the Commission established the offense levels for each crime, linked to a recommended imprisonment range. Fifteen-Year Assessment at 14. Accordingly, in many cases, the Guidelines represent a reasonable estimation of a fair sentencing range. *See Kimbrough,* 552 U.S. at 109.

When Guidelines are not the result of "the Commission's exercise of its characteristic institutional role," such as when they are not based on any identified empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Id.* (quoting *Rita*, 551 U.S. at 350); *see also Gall,* 552 U.S. at 46 n.2. (noting that not all Guidelines are tied to empirical evidence). Consequently, the Guidelines that are not based on empirical evidence are a less reliable appraisal of a fair sentence. *See Kimbrough,* 552 U.S. at 109-110. In such cases, it is "not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that application of the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case." *Kimbrough,* 552 U.S. at 110; *see also* *Spears v. United States*, 129 S. Ct. 840, 843 (2009) (per curiam) (clarifying that "district

courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines"); *United States v. O'Connor*, 567 F.3d 395, 398, n.4 (8th Cir. 2009) (assuming without deciding that *Kimbrough's* holding extends beyond the crack-cocaine Guidelines).

Both for policy reasons and because Congress had enacted mandatory minimum sentences, the Commission departed from past practices in setting offense levels for white-collar crimes, child abuse crimes, sexual offenses and violent crimes. Fifteen-Year Assessment at 15, 72-73; United States Sentencing Commission, *Report to Congress: Analysis of Penalties for Federal Rape Cases* 4-5 (March 1995) ("Federal Rape Penalties Analysis"), available at http://www.ussc.gov/reports.htm; United States Sentencing Commission, *The History of the Child Pornography Guidelines* 44-48 (October 2009) ("Child Porn. History Rep't"), available at http://www.ussc.gov/ full.pdf (discussing Commission's approach to setting a base offense level that corresponds to a mandatory minimum sentence). The Commission, "either on its own initiative or in response to Congressional actions, established guideline ranges that were significantly more severe than past practice" for violent crimes and sex offenses. Fifteen-Year Assessment at 47 (noting that Guidelines ranges were set above historical levels for violent crimes including rape); 12 (noting that the "percentage of offenders receiving imprisonment increased for both sexual abuse and sexual exploitation offenders in the guidelines era, and dramatically so for sexual exploitation offenders").

The Guidelines that establish the base offense levels for sexual abuse were not based on empirical data and national experience but driven by Congressional directive. *See* Fifteen-Year Assessment at 47; Federal Rape Penalties Analysis at 1, 4-5 (noting that

Section 40112 of the Violent Crime Control and Law Enforcement Act of 1994 directs the Commission to review and amend the Guidelines for aggravated sexual abuse found at U.S.S.G. § 2A3.1); Child Porn. History Rep't at 17 (noting that the Crime Control Act of 1990 contained a general directive regarding child sex abuse crimes that instructed the Commission to "amend existing guidelines for sentences involving sexual crimes against children . . . so that more substantial penalties may be imposed if the Commission determines current penalties are inadequate").  At the inception of the Guidelines, the crime of criminal sexual abuse carried a base offense level of 27.  See United States Sentencing Commission, Guidelines Manual, § 2A1.2 (a) (Nov. 1, 1987).  Congress "has legislated frequently on this issue and at times in rapid succession during the guidelines era."  Fifteen-Year Assessment at 93.  "Much like policymaking in the area of drug trafficking, Congress has used a mix of mandatory minimum penalty increases and directives to the Commission to change sentencing policy for sex offenses."  *Id.* (noting that "[i]n the PROTECT Act of 2003, Congress, for the first time since the inception of the guidelines, directly amended the Guidelines Manual and developed unique limitations on downward departures from the guidelines in sex cases"); *see, e.g.*, U.S.S.G. App. C (Vol. I), amends. 91 & 92 (1989); 392 (1991); 444 (1992); 477 (1993); 511 (1995); 545 (1997); *id.* (Vol. II) amends. 592 & 601 (2000); 615 (2001); 661 (2003); (Supp.) amend. 664 (2004); 701 (2007); 725 (2008).[3]  Also, the Commission has more than quintupled the number of

---

[3]Over time, these amendments have resulted in increasingly harsh punishments for sexual abuse under the Guidelines.  Most notably, Amendment 444, effective Nov. 1, 1992, added cross-references to 2A3.1 to cover "a significant proportion of cases sentenced under 2A3.2 (statutory rape) and 2A3.4 (abusive sexual contact) that involved conduct that would more appropriately be covered under an offense guideline applicable to more serious sexual abuse cases."  U.S.S.G. App. C (Vol. I), amend. 444 (1992).  Amendment 477 authorized an upward departure where the offense involves multiple acts that do not result in an increase in offense level under multiple count rules.  *Id.*, amend. 477 (1993).  Amendment 511strengthened the sexual offense Guidelines by enhancing penalties for repeat offenders and expressly authorizing an upward departure

cross-references to the guidelines through the years based on research findings that some offenders guilty of serious crimes, such as aggravated sexual abuse, were being charged and sentenced for less serious crimes like statutory rape or abusive sexual contact. Fifteen-Year Assessment at 104. The Commission itself acknowledges that in sexual abuse cases, "[t]he frequent mandatory minimum legislation and specific directives to the Commission to amend the guidelines make it difficult to gauge the effectiveness of any particular policy change, or to disentangle the influences of the Commission from those of Congress." *Id.* at 94.

By virtue of the special federal jurisdiction over Native American lands and violent crimes by or against Native Americans that occur on Indian land, Native Americans are subject to federal prosecution for many offenses that are prosecuted in the state courts when committed by other groups. Fifteen-Year Assessment at 114.

In its 1995 report to Congress, the Commission recognized, with respect to aggravated sexual abuse or rape, that "[b]ecause of the jurisdictional framework which results in Native Americans being prosecuted by the federal government rather than the states for these offenses, Native Americans receive longer sentences than if the federal government did not have such jurisdiction." Federal Rape Penalties Analysis at 7. The

_____

for recidivists. *Id., amend. 511 (1995).* Amendment 592 responded to several Congressional directives contained in the Protection of Children from Sexual Predators Act of 1998 by increasing the base offense level for statutory rape, and adding Internet enticement and child pornography enhancements as well as cross-referencing to enhancements for interstate transportation of minors to engage in sexual acts. *Id.* (Vol. II), amend. 592 (2000). Amendment 601 added an enhancement for use of a weapon. *Id.*, amend. 601 (2000). Amendment 615 responded to a Congressional directive and increased penalties for cases involving a pattern of activity of sexual abuse or exploitation of a minor. *Id.*, amend 615 (2001). Amendment 664 responded to Congressional directives in the PROTECT Act, codified as amended at <u>18 U.S.C. § 2252B</u>, by increasing the base offense level at <u>U.S.S.G. § 2A3.1</u> from level 27 to level 30 to maintain proportionality with the production of the child pornography guideline, which had been increased to 32 under the PROTECT Act. *Id.* (Supp.) amend. 664 (2004). Amendment 701 implemented Congressional directives of Adam Walsh Child Protection and Safety Act of 2006 by increasing the base offense level from 30 to 38 for convictions under 2241(c) to correspond with a mandatory minimum. *Id.*, (Supp.) amend. 701 (2007).

Commission concluded that "comparison of current federal rape sentences with state sentences indicates that federal offenders can expect to serve a longer period of prison confinement." *Id.* at 16. The Commission also noted that "it is expected that average federal sentences for rape will increase as a greater proportion of cases become subject to the 1992 cross-reference amendment" and that "[a]ssuming no change in state sentencing practices, it is anticipated that differences between federal and state rape sentences will become larger." *Id.* The Commission then predicted that "[a]s a greater proportion of cases become subject to the 1992 cross reference amendment, it is expected that rape sentences may grow closer in length to murder sentences and further in length from robbery and assault cases." *Id.*

The Sentencing Commission expressly voiced concerns that "Native American defendants are treated more harshly by the federal sentencing system than if they were prosecuted in their respective states" and convened the Native American Advisory Group to address issues of Native American sentencing. *See* Lawrence L. Piersol, *et al.*, *Report of the Ad Hoc Advisory Group on Native American Sentencing Issues* 21 n.37 (Nov. 4, 2003) (Native Amer. Adv. Group Rep't"), available at http://www.ussc.gov/NAAG/ NativeAmer.pdf. The Sentencing Commission's Advisory Group found that the jurisdictional framework "places more Native American offenders in federal court, and, when coupled with the longer federal sentences, it results in a disparate impact on Native Americans." Native Amer. Adv. Group Rep't at 28-29. The majority of defendants sentenced in the federal courts for sexual abuse crimes, involving what are commonly called rape, statutory rape, and molestation, are Native Americans. Fifteen-Year Assessment at 95; Native Amer. Adv. Group Rep't 21 n.37 (noting that "[f]or example, in

Minnesota, South Dakota, and New Mexico—three states with large Native American populations—Native Americans accounted for only six percent of sexual abuse offenders in state courts but over ninety percent of sexual abuse offenders in federal court"). The Advisory Group found it clear based on the data it reviewed that Native Americans were disproportionately affected by longer sentences for sexual abuse compared to state sentences for the same crimes, and also noted that passage of the PROTECT Act "would dramatically affect Native Americans more than other persons."[4] *Id.* at 23-24 (also noting as "troubling," the fact that "Congress neither consulted with nor seems to have anticipated the consequences of the PROTECT Act on Native Americans."). The Advisory Group recommended separating the guidelines aimed at interstate travel for exploitation of minors from the guidelines for heartland Native American offenses. *Id.* at 25-26. The Commission has not acted on that recommendation.[5]

The Advisory Group also reported that "[d]ata on all offenses reviewed by the Advisory Group confirms the devastating role that alcohol plays in reservation crime." *Id.* at iv. Even pre-*Booker*, federal courts, including the Eighth Circuit Court of Appeals,

---

[4]The PROTECT Act's stated purpose "is to restore the government's ability to prosecute child pornography offenses successfully," but its provisions increase federal sex offenses sentences overall. Native Amer. Adv. Group Rep't at 23, 24 n.42 (quoting S. Rep. 108-2 at 1). The Act includes a "two strikes you're out" provision, imposing a mandatory life sentence on anyone convicted in the federal courts of a second sex crime in which a minor is a victim. *Id.* at 23. The PROTECT Act also directly amended Application Note 4(b)(I) to U.S.S.G. § 4B1.5, so that any sexual offender who engages in "prohibited sexual conduct" with a minor on two or more occasions demonstrates a "pattern of activity" and is subjected to a five-level increase in the offense level, with a minimum offense level of 22. *Id.* The PROTECT Act also substantially increased the term of supervised release for Native Americans and other sex offenders, increasing the maximum term from five years to life. *Id.* at 24 n.44.

[5]In contrast, the Commission amended the Guidelines for involuntary manslaughter in response to the Advisory Group's conclusion that the Guidelines for involuntary manslaughter cases involving vehicular homicide did not appropriately reflect the seriousness of the offense. *See* U.S.S.G. App. C, amend. 652, Reason for Amendment.

recognized the unique sentencing considerations that are present in the prosecutions of Native Americans arising under the Major Crimes Act. Fifteen-Year Assessment at 16; *see, e.g., United States v. Decora, 177 F.3d 676, 679 (8th Cir. 1999)* (upholding a downward departure to probation for a Native American defendant convicted of assault with a dangerous weapon because of the adversity the defendant faced on the reservation)*; United States v. One Star, 9 F.3d 60, 61 (8th Cir. 1993)* (upholding a downward departure for a defendant convicted of assault with a dangerous weapon because of the "unusual mitigating circumstances" of reservation life); *United States v. Big Crow, 898 F.2d 1326, 1332-33 (8th Cir. 1990)* (holding that the adverse environment of reservation life can be considered as a mitigating circumstance justifying a downward departure under the Guidelines).

Sentencing courts must consider "the history and characteristics of the defendant" as one of the § 3553(a) factors. *See Rita*, 551 U.S. at 365 (Stevens, J., concurring). Although "[m]atters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civic, charitable, or public service are not ordinarily considered under the Guidelines," they are "matters that § 3553(a) authorizes the sentencing judge to consider." *Id.* (citations omitted).

### III. ANALYSIS

#### A. Guideline Calculation

The court adopts the findings in the PSR. Harden's base offense level under the Guidelines is 30. *See* U.S.S.G. § 2A3.1(a)(2). The court finds a two-level upward adjustment under U.S.S.G. § 2A 3.1(b)(2)(B) for a victim between the ages of 12 and 16

is warranted. Because the defendant elected to go to trial, no downward adjustment for acceptance of responsibility is warranted. Harden's resulting total offense level is 32. At criminal history category II, Harden's recommended sentencing range under the Guidelines is 135 to 168 months.

### B. Departure

The court finds no reason to depart from the Guidelines. As discussed below, the court will grant a § 3553(a) variance. Accordingly, the court finds no extended discussion of a departure is necessary.

### C. 18 U.S.C. § 3553(a) Factors

Harden's motion for a deviation or variance from the Guidelines is granted. The court finds a sentence outside the Guidelines is warranted in this case. The court finds that Harden should be sentenced to a period of incarceration of 97 months followed by a term of supervised release of eight years. This sentence fulfills the objectives of sentencing set out in Section 3553(a). In consideration of those factors, the court finds that a sentence of 97 months (roughly eight years) is sufficient, but not greater than necessary to accomplish the goals of sentencing.

In consideration of the nature and circumstances of the offense, the court notes that the defendant was convicted of rape and rape is a serious crime. The circumstances of the crime, however, though abhorrent, do not place this crime in the category of the most egregious conduct covered by the offense. The defendant deserves a sentence closer to the low end of the statutory sentencing range than the Guidelines recommend.

The court has considered the history and characteristics of the defendant. The defendant has been diagnosed as an alcoholic and acknowledges that alcohol is the source of many of his problems. The crime occurred under circumstances involving excessive drinking. The defendant's history of alcohol abuse operates to mitigate his culpability to some degree. The court also notes the defendant's youth and the absence of a history of violence. In connection with this analysis, the court also considers the adverse impact of Native American life on a reservation. The defendant has demonstrated a sincere desire to address his alcohol abuse issues. At the same time, the court recognizes that a substantial period of incarceration is warranted for a crime of this nature.

The court has also considered the Sentencing Guidelines as a factor in the Section 3553 analysis and as "the starting point and the initial benchmark" in determining the defendant's sentence. Because the Guidelines for sexual abuse crimes and other violent crimes were not developed within the confines of the Sentencing Commission's unique empirically-grounded area of expertise, they are not a reliable appraisal of similar sentences in similar courts of general jurisdiction. The court accordingly affords them less deference than it would to the Commission's empirically-grounded Guidelines.

The Sentencing Commission departed from reliance on previous empirical data on past practices in setting the original base offense levels for violent crimes and sex offenses to address concerns that past sentences for violent crimes were inadequate. The base offense level for the defendant's crime was later increased to achieve proportionality with Guidelines that were created in response to Congressional concerns about Internet child pornography and the transportation of minors for sexual exploitation, circumstances that

are not present in this crime. These actions result in an overstated Guidelines sentencing range.

Also, the court cannot disregard the Sentencing Commission's own admission that the sexual abuse Guidelines have a disparate effect on Native Americans. The Sentencing Commission's focus on heightened sentences for violent crimes and for Internet child pornography crimes results in harsh punishments for sex abuse crimes that fall only on Native Americans, since they are generally the only offenders sentenced in federal court for rape or sexual assault.

In connection with the court's consideration of the need to avoid unwarranted sentencing disparities, the court notes that the crimes of sexual assault or rape, if committed by a non-Native American outside a reservation, are prosecuted in state court. The Sentencing Commission has expressly found that the Sentencing Guidelines result in longer sentences for Native Americans than they would otherwise receive. The Commission's ad hoc Advisory Group recommended some changes to mitigate the disparity, but those recommendations have not been implemented. Under these circumstances, the court cannot conclude that the Commission is basing "its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise."

There is no way to compare sentences of Native Americans who commit these crimes to non-Native Americans without reference to state court sentences. The court finds no principled reason to subject this defendant to a substantially longer sentence than his state court non-Native American counterpart would serve. Although state court

sentences are not ordinarily considered in connection with federal court sentencing, such consideration is necessary when it is the only basis on which to assess the sentencing goal of avoiding disparity. Although there are arguably situations in which the disparate impact on a group of defendants could be justified by legitimate sentencing goals that target the shared characteristics that define the group, such as recidivists, it is hard to imagine that any legitimate sentencing purpose would justify the imposition of significantly higher sentences on Native Americans by reason of their status as Native Americans or their presence on Indian lands.

The court finds that a sentence of 97 months satisfies the general purposes of sentencing, including the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. The length of the defendant's sentence will afford adequate deterrence to criminal conduct of this nature. Because the defendant's conduct is closely linked to his alcohol abuse, any need to protect the public from his sexually abusive tendencies is obviated by the court's imposition of an eight-year period of supervised release with stringent conditions of supervision, including refraining from excessive use of alcohol.

## IV. CONCLUSION

The court finds that to sentence this defendant to the recommended Guidelines sentence of 135 to 168 months would violate the Sentencing Reform Act's overarching instruction that the court impose a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing. For the reasons stated above, the court finds Wakaja

Harden should be sentenced to 97 months' incarceration. A Judgment of Conviction in conformity with this Sentencing Memorandum will issue this date.

DATED this 19th day of April, 2010.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Court Judge

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.